# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 16, 2010

No. 09-30528

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BYRON LADELL WILLIAMS,

Defendant - Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans Division

Before JONES, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Defendant-Appellant Byron Ladell Williams appeals his conviction of illegal possession of a "Masterpiece MAC-9mm"-style assault rifle in violation of 18 U.S.C. § 922(g)(1)[1] and his corresponding 108-month prison sentence, reflecting an upward variance from the Sentencing Guidelines range. Williams contends that: (1) the district court erred in admitting into evidence prior acts that were irrelevant to the charge or unduly prejudicial in violation of Federal

---

[1] "It shall be unlawful for any person—(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(1).

No. 09-30528

Rule of Evidence 404(b); (2) the district court abused its discretion under Federal Rule of Evidence 403 by admitting a recorded telephone conversation that was irrelevant to the case; and (3) the district court committed plain error by considering Williams's bare arrest record as a basis for an upward variance from the Sentencing Guidelines range in determining his sentence. For the reasons set forth below, we AFFIRM both Williams's conviction and sentence.

## I. FACTUAL BACKGROUND

On Sunday, March 30, 2008, New Orleans Police Department Officers Brian Sullivan and Joseph Lusk were patrolling the parking lot of the Hollypark apartments (where several previous crimes had occurred) when they spotted a double-parked car with tinted windows. At least two individuals were inside the vehicle, one in the driver's seat and the other in the passenger seat directly behind the driver's seat. Some evidence introduced at trial indicated that a third person, Kendrick McGee, was in the passenger seat at the time the police first spotted the vehicle but fled before they approached it. As Sullivan's police cruiser approached the vehicle, Sullivan observed the rear passenger, Williams, duck down, presumably to avoid detection. Moments later, Sullivan exited his cruiser and approached the car. At that point, the rear-seat passenger appeared to lean down and reach between his feet, and suspecting that the passenger was reaching for a gun, Sullivan pulled open the car door, ordered the passenger out of the car, and turned him over to Officer Lusk.

When Sullivan returned to the vehicle, he peered in through the still-open car door and observed a black semi-automatic MAC-9mm in plain view on the rear, driver's-side floorboard. Before Sullivan could secure the weapon, Williams attempted to flee the scene but was quickly reapprehended, handcuffed, and placed in the back of the police cruiser. Sullivan then resumed his investigation of the weapon and determined that it was loaded with twenty-six bullets and had its safety switch taped in the "fire" position. The driver, Robert Anderson

2

(who was still in the car) told Sullivan that he and Williams were at the Hollypark apartments to meet a resident, that he had picked up Williams a half-hour earlier, and that he knew nothing about the gun.[2] After being read his Miranda warnings, Williams admitted that he was a convicted felon, and the conviction was confirmed through a computer check. Williams explained that the gun was not stolen and that he was holding it for a person named Raven. Nonetheless, he was charged in a one-count indictment of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

Prior to trial, the government moved to introduce, under Federal Rule of Evidence 404(b), evidence that Williams had been arrested on four separate occasions for possessing a firearm. The government urged that this evidence would be used to prove (1) that Williams knowingly possessed a firearm, (2) intent under a theory of constructive possession, and (3) absence of mistake or accident. Williams disputed the admissibility of that evidence, contending that the arrest and conviction records were not probative of his guilt and that the prejudicial impact of admitting the evidence greatly exceeded its probative value. The district court granted the government's motion in part, allowing the government to admit evidence regarding two of his arrests for firearm possession. Accordingly, the government presented evidence that Williams was arrested for possession of a firearm while in possession of illegal narcotics following an incident in which he threw a gun into shrubbery near an apartment building while fleeing from a vehicle wrecked in a high-speed chase. It also presented evidence of Williams's arrest for possession of a firearm with an obliterated mark and felon in possession of a firearm where, following a high-speed chase, police found an assault rifle leaning against the center console of

---

[2] With the exception of the firearm, Sullivan's search of the vehicle revealed only a cup containing frozen daiquiri on the passenger-side floorboard. Williams admitted that the daiquiri was his and was thus issued a citation for violating the open-container law.

the car from which Williams had fled. The government entered these instances of similar criminal conduct through the testimony of Wesley Humbles, an officer of the New Orleans Police Department, and Glen Webber, an officer of the Jefferson Parish Sheriff's Office. Prior to the introduction of that evidence, the court instructed the jury that the evidence could be considered only for purposes of determining "if the defendant had the motive, state of mind, or the intent to commit the crime charged in the indictment, or to show the defendant's absence of mistake or accident."

The government also introduced eight recordings of jailhouse calls between Williams and various persons including his mother and McGee. The government alleged that these calls supported the testimony of Officer Sullivan and that Williams had admitted that he handled the gun and attempted to hide it before the officers approached. The defense objected to the admission of the final recorded telephone call ("Track 8") between Williams and his mother as unduly prejudicial under Rule 403. On the recording, Williams's mother discussed her efforts to find Anderson and convince him to testify at Williams's trial. On the recording, she told Williams that she had enlisted McGee's help in getting Anderson to testify, and that she and McGee would "make sure [Anderson] do it." Williams assented to this plan. The government justified admitting the evidence on the grounds that Track 8 was relevant to identifying McGee, whose number was mentioned in the phone call, and clarifying his role in order to determine the ultimate issue of whether Williams possessed the firearm. The defense objected that the evidence was unduly prejudicial because it was cumulative of other evidence admitted for the purpose of identifying McGee and served only to suggest witness intimidation. The court admitted the call, but ordered the government not to argue that the call itself suggested any improper conduct.

No. 09-30528

At the close of the three-day trial, the district court called a charge conference and issued jury instructions on actual, constructive, sole, and joint possession. The defense did not object to the instructions, and the jury returned a guilty verdict on the single-count indictment. Williams made a post-judgment motion for acquittal on the basis that the government had not proven Williams's "knowing and intentional possession" of the gun, but the district court denied the motion.

The district court conducted a sentencing hearing in June 2009 to receive evidence in support of the government's motion for an upward departure on the basis that Williams's criminal history was under-represented by the Guidelines. It also considered Williams's objection to the Pre-Sentence Report's recommendation that he receive a two-level enhancement for obstruction of justice based on the conversation recorded on Track 8. The government submitted testimony regarding Williams's five prior gun-possession arrests, for which there were no convictions, along with testimony regarding Williams's arrest for second-degree murder.

The court granted the defense's objection to the enhancement for obstruction of justice and denied the government's motion for an upward departure based on the under-representation of criminal history. However, the district court granted an upward variance pursuant to 18 U.S.C. § 3553(a), citing several factors including the serious nature of Williams's offense, his prior arrests for possession of a weapon for which the government provided testimony,[3] his prior convictions, and the fact that he committed the instant offense while on parole. In determining the need "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), the court additionally

---

[3] The government called witnesses to establish Williams's prior arrests for gun possession, for which there were no convictions, and to establish his involvement in a murder for which he had been arrested, but not convicted.

considered that Williams had accumulated, over a short time-span, twenty-two arrests not resulting in convictions.  Based on the § 3553(a) factors, the district court rejected the 51-to-63-month guideline range as inadequate and sentenced Williams to 108-months imprisonment.

Williams has filed a timely appeal, challenging the admission of evidence of two of his prior arrests and Track 8, and also the district court's consideration of his arrest record in imposing the 45-month upward variance.

## II.  DISCUSSION

### A.  Admission of Rule 404(b) Evidence

In *United States v. Beechum*, we established a two-prong test for determining if evidence of a defendant's prior wrongs is admissible under Federal Rule of Evidence 404(b): such evidence is admissible only if (1) it is relevant to an issue other than the defendant's character, and (2) its probative value is not substantially outweighed by undue prejudice to the defendant, and the evidence meets the other requirements of Rule 403.  *Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).  Williams alleges that the district court's decision to admit evidence regarding two of his prior arrests for gun possession violated both prongs of this test.  He first contends that the evidence was relevant to his character alone because the case was one of actual possession—a theory for which such convictions would be irrelevant.  Second, he alleges that the evidence failed to satisfy the second prong of the *Beechum* test, which requires that Rule 404(b) evidence "possess probative value that is not substantially outweighed by its undue prejudice" in accordance Rule 403.  *Id.*

### i.    Standard of Review

"Generally, we review a trial court's decision to admit evidence for abuse of discretion." *United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005) (citation omitted).  But where the defendant did not object to the evidence on the basis presented on appeal, we review the district court's evidentiary ruling for plain

error. *See United States v. Burton*, 126 F.3d 666, 671 (5th Cir. 1997). With regard to Williams's first point of error, the government contends that plain-error review is required because Williams's attorney never objected to the Rule 404(b) evidence on the ground that the government's case was solely one of actual possession. Conversely, Williams insists that the proper standard is abuse of discretion. We need not resolve which standard is appropriate because, as we explain below, the evidence was properly admitted as relevant to an issue other than his character. *Beechum*, 582 F.2d at 911. Williams raised his undue prejudice objection during trial, so we review the court's Rule 403 ruling for clear abuse of discretion. *See United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007).

## ii.    Relevance of Rule 404(b) Evidence to an Issue Other than Character

A bedrock principle of the Federal Rules of Evidence is that "relevant evidence is admissible except as otherwise provided." *United States v. Jones*, 484 F.3d 783, 786 (5th Cir. 2007) (quoting Fed. R. Evid. 402). Under Rule 404(b), evidence of a person's crimes, wrongs, or other acts is "not admissible to prove the character of a person in order to show action in conformity therewith." But where there is some justification "for receiving evidence of the nature of prior acts on some issue other than status (i.e. to prove . . . knowledge, identity, or absence of mistake or accident . . . ), Rule 404(b) guarantees the opportunity to seek its admission." *Old Chief v. United States*, 519 U.S. 172, 190 (1997) (internal quotation marks and citation omitted).

In the context of a weapon-possession case, Rule 404(b) evidence of intent is relevant to a theory of constructive possession, but not to a theory of actual possession. *See Jones*, 484 F.3d at 788. To demonstrate constructive possession, the government must show that the defendant exerted ownership, dominion, or control over an object, or over the premises where the object was found. *See*

*United States v. Torres*, 114 F.3d 520, 524 (5th Cir. 1997).  Evidence of knowledge and intent is critical in constructive-possession cases, as "[a] defendant will often deny any knowledge of a thing found in an area that is placed under his control (e.g., a residence, an automobile) or claim that it was placed there by accident or mistake."  *Jones*, 484 F.3d at 788.  The "'paradigmatic constructive possession scenario'" in which contraband is found under the defendant's seat in a car presents "'a classic case for introducing prior instances of gun possession, since the government would otherwise find it extremely difficult to prove that the charged possession was knowing.'"  *Id*. at 790 (quoting *United States v. Garner*, 396 F.3d 438, 442-43 (D.C. Cir. 2005)).  By contrast, such evidence is not relevant under an actual possession theory because the government must show only that the defendant was aware that "(1) he physically possesses the thing, and (2) the thing he possesses is contraband." *Id*. at 788.[4]

This distinction between the evidentiary requirements for actual and constructive possession formed the basis of our holding in *United States v. Jones*—that the trial court erred by admitting the factual basis of a defendant's prior firearm-possession arrest because the government's case could support only a finding of actual possession, not constructive possession.  *See Jones*, 484 F.3d at 790-91.  Williams contends that *Jones* compels the same result here, as "the instant prosecution was based on actual possession" and "the evidence did not support a conviction based on constructive possession." Because the government provided sufficient evidence to support a theory of constructive possession in this instance, we find *Jones* to be inapposite.

---

[4] Knowledge evidence is not relevant because generally, "where the government has shown that the defendant had a firearm under his immediate physical control, any contention that he did not know the nature of what he possessed is effectively precluded." *Jones*, 484 F.3d at 788.

No. 09-30528

In *Jones*, we held that Rule 404(b) evidence could not be admitted to support a theory of constructive possession where neither the testimony of the government's sole witness nor that of the defendant's witness could support a theory of constructive possession. *See id*. at 788-91. There, the government's sole witness, a police detective, testified that he saw the defendant possess an object and toss it beneath a house, which the defendant did not own or occupy. The police later retrieved a gun from that location. The defendant's eyewitness disputed that account, testifying that the defendant had never possessed the gun and was not near the house. *Id*. at 785. Under these circumstances, we held that the jury had a choice between two stories, neither of which supported a theory of constructive possession. If the jury disbelieved the detective's observation of actual possession while still believing that the officer followed the defendant into the alley, the "credited facts would present neither a 'paradigmatic constructive possession' scenario (contraband found under defendant's seat in a car) nor a 'classic case' for introducing 404(b) evidence." *Id*. at 790. The jury would instead "be left with the picture of a man walking, running, or standing next to a house that he did not own, rent, occupy, or otherwise exercise any dominion over, underneath which a gun just happened to be found"—evidence too weak to justify a conviction for constructive possession. *Id*. Thus, it was error to admit the Rule 404(b) evidence in what was "exclusively an *actual* possession case." *Id*.

Turning to the instant case, we cannot conclude that the government's case against Williams was exclusively one of actual possession because, unlike in *Jones*, the government has presented sufficient evidence to support a theory of constructive possession. Here, undisputed witness testimony established that the gun was found under Williams's seat in the vehicle—the "paradigmatic constructive possession" scenario in which Rule 404(b) evidence is warranted. *Id*. Williams insists that *Jones* nevertheless controls because the government

9

No. 09-30528

also submitted evidence of actual possession, but the propagation of this alternative theory in no way negates the government's well-supported theory of constructive possession.

Nevertheless, Williams argues that the district court should have withheld its ruling on the government's Rule 404(b) motion until such a time that the court could be certain that the government's evidence would actually support a theory of constructive possession. While this may have been a prudent decision by the court in hindsight, no one at the pre-trial hearing put the court on notice that the case could become solely one of actual possession. And though such evidence would be inappropriate in that instance, we do not require our district judges to be clairvoyant to avoid clear error.

In any event, the evidence presented at trial bore out the propriety of the district court's pre-trial ruling. Williams's argument that the government's case radically transformed into one of actual possession is thoroughly undercut by the fact that any such transformation proved imperceptible at trial, even to the defense. The government introduced the Rule 404(b) evidence prior to its introduction of the jailhouse recordings—the alleged actual-possession evidence—so we agree that Williams could not have discovered a shift in the government's theory at the time his arrests came into evidence. But at the close of the government's case in chief, at which point the totality of the government's case had been fully revealed, Williams moved for acquittal without apprising the court that the case had become one of actual possession. Rather, defense counsel argued that the government had not met its evidentiary burden, but conceded that the "best that the government has done" toward this end was presenting Officer Sullivan's testimony that he found the gun "in proximity to where Mr.

10

No. 09-30528

Williams had sat." Per defense counsel's own words, the government's strongest case was for constructive possession.[5]

In short, our review of the record reveals that, throughout trial, the government's theory of the case remained consistent with the description given in the government's pre-trial motion to admit evidence of Williams's arrests pursuant to Rule 404(b). The evidence was relevant to the elements of constructive possession, so the first prong of the *Beechum* test is satisfied.

### iii.    Rule 403 Balancing Test

Williams argues, alternatively, that the probative value of the evidence of his two arrests was substantially outweighed by the risk of unfair prejudice, in violation of Rule 403 and the second prong of the *Beechum* test. *See Beechum*, 582 F.2d at 911. We review the district court's Rule 403 ruling "giv[ing] great deference to the court's informed judgment and will reverse only after a clear showing of prejudicial abuse of discretion." *United States v. Peden*, 961 F.2d 517, 521 (5th Cir. 1992).

"[T]he central concern of rule 403 is whether the probative value of the evidence sought to be introduced is substantially outweighed by the danger of unfair prejudice." *Beechum*, 582 F.2d at 913 (internal quotation marks omitted). There is no question that the probative value of the testimony regarding Williams's two arrests was great. Prior acts, especially those involving possession, are "highly probative" of a defendant's intent. *United States v. Willis*, 6 F.3d 257, 262 (5th Cir. 1993), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137 (1995). Both of Williams's extrinsic offenses were

---

[5] We also note that at the close of trial, the court issued jury instructions on both actual and constructive possession, and the defense made no objection to the instruction on constructive possession.

factually similar to the instant case,[6] indicating that he had both the knowledge of the gun's presence and the intent to exercise dominion over it—the same intent and knowledge evinced in the extrinsic offenses. But while the similarities between Williams's extrinsic offenses and the charged crime heightened the probative value of the evidence, they also increased the ever-present risk of unfair prejudice by inferring propensity. *See Beechum,* 582 F.2d at 915 & n.20; *see also Old Chief v. United States*, 519 U.S. 172, 182–83 (1997). This danger is "particularly great where, as here, the extrinsic activity was not the subject of a conviction." *Beechum*, 582 F.2d at 914.

We are nevertheless convinced that the evidence was properly admitted. The district court issued appropriate limiting instructions to the jury both when the evidence was admitted and later during the jury charge, tempering the risk of unfair prejudice against Williams. Prior act evidence is often a necessity in constructive possession cases, and Williams has not shown that the government could have admitted alternative evidence of "substantially the same or greater probative value but a lower danger of unfair prejudice." *Old Chief*, 519 U.S. at 183. Accordingly, we conclude that the court did not abuse its discretion by admitting the evidence.

## B. Admission of Track 8

Williams contends that the district court erred by admitting Track 8, a recorded jailhouse conversation between Williams and his mother, Hilda Williams, on the basis that the track improperly suggested that he had intimidated one of his own witnesses to testify on his behalf. According to Williams, the tape possessed virtually no probative value, and that any such value was "substantially outweighed by the danger of unfair prejudice" arising

---

[6] The factual circumstances of the two admitted arrests were strikingly similar to those in the instant case. In each incident, Williams possessed a firearm while he was a passenger in a vehicle, and he later attempted to create distance between himself and the firearm, either by discarding it or by fleeing the vehicle and leaving the firearm inside.

from the improper inference of witness intimidation. *See* Fed. R. Evid. 403. Defense counsel properly objected to the admission of the conversation at trial on that basis. "The standard for reviewing an alleged violation of Federal Rule of Evidence 403 . . . is 'especially high' and requires a 'clear abuse of discretion' for reversal." *United States v. Setser*, 568 F.3d 482, 495 (5th Cir. 2009). Any error in admitting such evidence is subject to harmless error review, and reversal is not required unless there is a "reasonable possibility that the improperly admitted evidence contributed to the conviction." *United States v. Mendoza-Medina*, 346 F.3d 121, 127 (5th Cir. 2003) (internal quotation marks and citation omitted), *cert. denied*, 130 S.Ct. 437 (2009).

The court delayed ruling on Track 8 until after the jury heard seven prior tracks of Williams's conversations with Hilda Williams and McGee. The government argued that the previous seven tracks demonstrated that Williams had discussed the circumstances of his arrest with both Hilda Williams and McGee, and that Byron Williams recounted conflicting stories to them about whether he had been in Anderson's car immediately before his arrest. The government sought to admit Track 8 to show that Byron Williams "agree[d] with statements that his mother specifically ma[de]" and to show that both Anderson and Kendrick had been in the car prior to the encounter with the police officer. Defense counsel objected on the basis that the following exchange improperly suggested that he and his mother had attempted to intimidate his witness, Robert Anderson,[7] the driver of the car in which Byron Williams was arrested:

| Byron [Williams]: | [S]o you had talked to both of them. |
| Momma [Hilda]: | Yeah. |
| Byron: | I probably call him, so you had, so you had talked to both of them. |

---

[7] Anderson was subpoenaed to testify for the defense, but he invoked his Fifth Amendment right and did not testify.

No. 09-30528

| | |
|---|---|
| Momma: | Yeah, I talked to both of them and Kendrick said he knew he was going to make sure Rob handle this business. He said we going, he going to handle it and I said do you think he is going to do it and Kendrick said, yeah, he's going to do, we going to make sure he do it. |

The conversation occurred after defense counsel encountered difficulties locating Anderson, and Hilda Williams had agreed to help find him. Because the jury was not aware of these difficulties when the tape was played, Williams argues that he was unfairly prejudiced because the jury could have interpreted the conversation as a plan to intimidate Anderson into giving exculpatory testimony.[8]

Assuming *arguendo* that the evidence was improperly admitted, we do not reverse because Williams has not demonstrated a reasonable possibility that the admission of Track 8 contributed to his conviction. *See Mendoza-Medina*, 346 F.3d at 127. We cannot say that the brief, vague exchange on Track 8 contributed to Williams's conviction in light of the substantial evidence of Williams's guilt presented at trial. *See United States v. Williams*, 957 F.2d 1238, 1243 (5th Cir. 1992). Officer Sullivan testified that he saw Williams moving suspiciously while he was seated in the vehicle, and Sullivan retrieved the weapon immediately underneath the seat that Williams had occupied. Williams's prior arrests in similar circumstances indicated that he was aware of the weapon and intended to possess it. His statements on Tracks 1–7, the admission of which is not challenged here, likewise corroborated Sullivan's testimony. Further, in his recorded conversation with McGee, Williams admitted that he had attempted to hide the gun in Anderson's car before he was

---

[8] During sentencing, the government sought a sentencing enhancement for obstruction of justice based on this exchange, but the district court denied the request. It found that Williams's attorney had tasked Williams's mother with locating witnesses, and that she carried out that duty without obstructing justice.

14

No. 09-30528

apprehended.    This evidence is more than sufficient to support Williams's conviction, so any error by the district court in admitting Track 8 was ultimately harmless.

## C. Williams's Sentencing Variance

Williams contends that the district court erred by taking into account his "bare arrest record"[9] when it imposed a 108-month sentence, an upward variance from the 51-to-63-month Sentencing Guidelines range.  Williams did not raise an objection below, so we review for plain error. *United States v. Olano*, 507 U.S. 725, 731-32 (1993).  Consequently, Williams must demonstrate (1) the district court committed error, (2) the error was plain or obvious, (3) the error affected his substantial rights, and (4) the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 732 (citations and internal quotation marks omitted).

Whether a court commits error by considering "the mere fact [of a defendant's] prior arrests" in imposing an upward variance pursuant to 18 U.S.C. § 3553(a) is an issue of first impression in this circuit. *See United States*

---

[9] The term "bare arrest record" comes not from our own precedent, but from the Third Circuit's decision in *United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009).  There, the Third Circuit held that a district court committed plain error by increasing a defendant's sentence based on the court's inference that he committed particular acts evidenced only by a handful of arrest records that were uncorroborated by additional evidence. *Id.*  In this circuit, it is error for a district court to impose an upward departure based on the "mere fact of prior arrests," or "arrests, *standing alone*." *United States v. Jones*, 444 F.3d 430, 434, 436 (5th Cir. 2006).  These phrases have essentially the same meaning as the term "bare arrest record"—an arrest for which the only evidence is an arrest record. *Berry,* 553 F.3d at 284; *Jones*, 444 F.3d at 434, 436.

Unlike "arrests, standing alone," arrests that are corroborated by record evidence or testimony may be considered in any event. *See United States v. Lopez-Velasquez*, 526 F.3d 804, 807 (5th Cir. 2008) (noting that the defendant's arrests did not "stand alone," and thus were properly considered, where they were corroborated by additional record evidence).  However, the district court's consideration of other, unrelated factors, such as the defendant's convictions for other acts, does not alleviate the error that the court commits by considering the "mere fact" of a defendant's arrests in imposing an upward departure; such additional considerations go only to whether the error ultimately affected the defendant's substantial rights. *See Jones*, 444 F.3d at 436.

*v. Lopez-Velasquez*, 526 F.3d. 804, 807 (5th Cir. 2008) ("[T]his court has not . . . held that prior arrests may not be factored into a *non*-Guidelines sentence pursuant to § 3553(a).") (holding that the district court's consideration of the defendant's arrests was not improper where those arrests were supported by record evidence). Williams relies on this court's precedent holding that it is error for a district court to consider the "mere fact of [a defendant's ] prior arrests" in imposing an upward departure in support of his argument that it is likewise error here. *See United States v. Jones*, 444 F.3d 430, 436 (5th Cir. 2006); *see also United States v. Jones,* 489 F.3d 679, 681 (5th Cir. 2007).

In *Jones,* 444 F.3d at 434-36, we first considered the question of whether a district court commits plain error by considering the "mere fact" of an arrest in imposing an upward departure. We answered the question in the affirmative, finding that the district court's consideration ran afoul of two separate Guidelines provisions:  § 4A1.3(a)(1), which requires that an upward departure based on the likelihood that the defendant will commit other crimes be supported by "reliable information"; and §4A1.3(a)(3), which explicitly prohibits a court from considering a prior arrest record in granting an upward departure. *See Jones*, 444 F.3d at 436 (citing *Williams v. United States*, 503 U.S. 193, 200 (1992) ("[I]t is an incorrect application of the Guidelines for a district court to depart from the applicable sentencing range based . . . on a factor that the Commission has expressly rejected as an appropriate ground for departure.")). We did not vacate the sentence, however, because the defendant failed to show that the error affected his substantial rights where (1) the sentence was reasonable and (2) the district court's consideration of numerous other factors revealed no reasonable probability that his sentence would have been lower but for the consideration of his arrests. *See id.*

Relying on language from *Jone*s stating that "[a]rrests, *standing alone*, do not constitute reliable information under either the Guidelines or our precedent

pre-dating the Guidelines," *id.* at 434 (citing *United States v. Cantu-Dominguez*, 898 F.2d 968, 971 (5th Cir. 1990); *United States v. Labarbera*, 581 F.2d 107, 109 (5th Cir. 1978)), Williams argues that the district court erred by recounting Williams's twenty-two arrests accumulated in a time-frame of only "five years or so" in the course of evaluating whether the community would be imperiled by Williams's future crimes.[10] Though we have not addressed whether the court's action would constitute error under our pre-Guidelines precedent, two of our sister circuits have considered whether, even outside the context of an upward departure, a sentencing court may properly consider conduct supported only by an arrest record or a handful of arrest records and held that it may not. *See United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009) (holding that a district court reversibly erred by increasing a defendant's sentence on the basis of a defendant's "bare arrest record," though the sentence imposed remained within the Guidelines range); *United States v. Zapete-Garcia*, 447 F.3d 57, 61 (1st Cir. 2006) (holding that a district court reversibly erred by relying on the record of a single prior arrest as justification for imposing an upward variance because "arrest happens to the innocent as well as the guilty."). But even these circuits that have held that a court may not infer behavior from a single arrest or a small number of arrests have recognized that an extensive pattern of arrests might properly be considered.[11]

---

[10] Apart from an additional note that Williams had been arrested seven times since 2005, the court made no references to arrests that were not also the subject of testimony or record evidence during its lengthy discussion of the § 3553(a) factors.

[11] *See Zapete-Garcia*, 447 F.3d at 61 (noting that, in the district court's evaluation of a sentence enhancement, "a series of past arrests might legitimately suggest a pattern of unlawful behavior even in absence of any convictions."); *see also Berry*, 553 F.3d at 284-85 (acknowledging that "there may be situations where the number of prior arrests, and/or the similarity of prior charges to the offense of conviction, becomes so overwhelming and suggestive of actual guilt that they become exceedingly difficult to ignore," but declining to decide "when the frequency and/or pattern of arrests becomes so egregious that it could support a conclusion that the arrests are probative or prior criminality"); *cf. United States v.*

No. 09-30528

Because our review here is for plain error, we need not resolve today whether it is error for a district court to consider a defendant's "bare arrest record" in imposing a non-Guidelines sentence, or whether an extensive pattern of arrests possesses greater evidentiary value than a single arrest record such that it may be considered when the district court imposes a non-Guidelines sentence.  Even assuming *arguendo* that the court erred in considering his arrests, we still must determine "[w]hether the consideration of prior arrests in conjunction with other, permissible, factors affected [Williams's] substantial rights and whether, assuming it did, the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Jones,* 444 F.3d at 436.

Here, the district court's lengthy and weighted discussion of other significant, permissible factors belies Williams's argument that the alleged error affected his substantial rights. *See United States v. Villegas*, 404 F.3d 355, 364. The district court preceded its analysis of the 18 U.S.C. § 3553(a) factors by declaring that the maximum sentence in the guideline range was "woefully inadequate" in light of his two prior adult felony convictions, his four juvenile felony convictions, his commission of the instant offense while on probation, and the fact that he was wanted in Texas for parole violations.  In considering Williams's history and characteristics, the court noted that he had four separate juvenile convictions that were unaccounted for in his criminal-history calculation, including two convictions for the distribution of cocaine, a conviction for simple burglary, and a conviction for unauthorized use of a motor vehicle.[12]

---

*Walker*, 98 F.3d 944, 948 (7th Cir. 1996) (reasoning that the defendant's twenty-three arrests were cumulatively probative of underlying criminal behavior, but holding that the court should not have considered the pattern of arrests in the context of imposing an upward departure because § 4A1.3 of the Guidelines expressly prohibits such considerations).

[12] The court also emphasized the significance of a few of Williams's arrests for which the government had submitted testimony—his arrest for second degree murder and three arrests for possession of a firearm, including one with an obliterated serial number.

18

The district court also relied heavily upon on his convictions—not the mere fact of his arrests—in evaluating the remaining section 3553(a) factors. The court found that a Guidelines sentence would not afford adequate deterrence to criminal conduct because the light sentences he received for past convictions had not deterred him from committing new crimes. Although the court took into account the rate of Williams's prior arrests in evaluating the need to protect the community from further crimes, it gave significant consideration to the egregious facts of the instant case: "the defendant had in his possession a [MAC] 9 millimeter semiautomatic handgun gun which contained a live round in the chamber and a high capacity magazine loaded with 25 live rounds. The manual safety on the weapon was held in the off position by electrical tape."

In summary, where the district court based its variance on Williams's multiple felony convictions, his persistence in committing crimes despite the benefit of lenient sentencing, the brazen nature of his conviction for being a felon in possession of a loaded MAC 9 millimeter semiautomatic handgun with the safety disabled, and his arrests for similar crimes supported by testimony presented at trial and at the sentencing hearing, Williams has not demonstrated a reasonable probability that he would have received a lesser sentence but for the court's consideration of his "bare" arrest record. We also find that his sentence is objectively reasonable because the § 3553(a) factors support it. *See United States v. Brantley*, 537 F.3d 347, 350 (5th Cir. 2008). The district court thoroughly analyzed these factors, and its limited comment on his arrest record does not impugn its conclusion that the significant variance was justified.

Finally, we find that Williams has not satisfied the last factor of the plain-error-review inquiry. His single sentence of argument on this prong is insufficient to demonstrate that the alleged error affected the fairness, integrity, or public reputation of judicial proceedings. *See Olano*, 507 U.S. at 732. Accordingly, we affirm the sentence imposed by the district court.

No. 09-30528

## CONCLUSION

For the foregoing reasons, we AFFIRM Williams's conviction and sentence.