# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 16, 2011

Lyle W. Cayce
Clerk

No. 09-20870

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ALBERTO PENA; BERNARDO PENA, also known as Bernie Pena,

Defendants–Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CR-177-3

Before KING, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

This case concerns a scheme to profit from inducing workers from India to illegally enter the United States through the use of non-immigrant H-2B work visas. After a jury trial, Defendants Bernardo and Alberto Pena were convicted of fourteen counts of encouraging and inducing illegal immigration for private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), (a)(1)(A)(v)(II), and (a)(1)(B)(i), and one count of conspiracy to commit the aforementioned crimes in violation of 18 U.S.C. § 371. Additionally, Bernardo was convicted of one count

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-20870

of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and Alberto was convicted of one count of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957.  On appeal, Bernardo challenges the sufficiency of the evidence supporting his convictions, both Bernardo and Alberto challenge the admission of visa applications not concerning Indian nationals, and Alberto challenges the seizure of those applications as beyond the scope of the search warrant.  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Bernardo and Alberto Pena are twin brothers who both worked for AMEB Business Group ("AMEB"), a visa facilitation company they helped found in Brownsville, Texas. AMEB specialized in assisting U.S.-based employers recruit foreign temporary workers and handle H-2B visa-application paperwork.  Both brothers were owners and directors of AMEB, and Alberto served as the company's President, while Bernardo was the company's registered agent and assisted with paperwork and visa facilitation.  The Penas ran AMEB along with Marte Villar, who was AMEB's Vice President and in charge of business development.

An H-2B visa permits an alien to enter the United States for up to one year to work in nonagricultural, labor-related jobs, with the possibility of an extension up to three years.  An employer or its agent must follow a series of steps in order to obtain an H-2B visa, including filing an I-129 "Petition for a Non-immigrant Worker"—setting forth the number of workers, the type of work to be done, and the country from which the workers are sought—with the Citizenship and Immigration Services branch of the Department of Homeland Security ("CIS").  If CIS approves the I-129 petition, it sends it to the U.S. Consulate in the country from which the worker is sought.  The foreign worker also files an application for a visa with the Consulate, which conducts an interview with the applicant.  If the Consulate approves the application, the

No. 09-20870

foreign worker is granted an H-2B visa and is permitted travel to the United States to work. An approved worker is permitted to enter the United States only for the reason stated in the I-129 petition and to work for only that specific employer.

The events relevant to this appeal began when AMEB contracted with Viscardi Industrial Services ("Viscardi Services") to hire foreign workers for construction projects in Louisiana and Texas. Viscardi Services was owned and operated by Keith Viscardi, and served as a labor resource provider for industrial and oil companies. AMEB and Viscardi entered into a service agreement on April 14, 2005, whereby AMEB agreed to act as an agent for Viscardi Services in preparing and submitting H-2B visa applications for 400 workers from India and Mexico at a charge of $1,000 per worker. This business agreement developed after Villar approached Keith Viscardi, with whom he was previously acquainted. At the time, Viscardi did not know the Penas.

In May 2005, AMEB began processing H-2B visa applications on behalf of Viscardi Services. Villar retained the services of Mahendrakumar ("Mack") Patel to recruit workers from India. Mack asked his relative, Rakesh Patel, to contact Rakesh's brother, Naimesh Patel, who was living in India, to identify workers seeking to come to the United States. In June 2005, Naimesh and Rakesh began providing names of the prospective workers from India, and Alberto filed the first round of visa applications. CIS subsequently approved I-129 petitions for 300 Indian workers and 200 Mexican workers to work on construction projects for Viscardi Services from October 1, 2005, through July 31, 2006.

Following the visa approvals, the Indian workers filed applications with the Consulate in Mumbai, India. Bernardo traveled to India from September 9, 2005, through October 1, 2005, to assist the workers with the application and interviews. To expedite the approval process, Bernardo attempted to meet with

3

Rachna Korhonen, the processing agent in the Consulate. When Bernardo was unsuccessful, Alberto contacted the Consulate several times in an attempt to get Bernardo a meeting. Viscardi also requested assistance from members of Congress in expediting visa requests to assist with post-Hurricane Katrina work. Allegedly because of letters sent by members of Louisiana's congressional delegation, Korhonen met with Bernardo on September 23, 2005, but declined to expedite the visa applications. The Consulate did not conduct worker interviews until December 2, 2005.

On October 5, 2005, while the applicants were awaiting interviews, Mack, Rakesh, Viscardi, and Villar agreed in writing to charge the Indian visa applicants $20,000 per visa. The plan called for the Patels to recruit the Indian visa applicants and to receive $2,500 per visa; Viscardi Services would be listed as the employer on visa forms and Viscardi would receive $10,000 per visa, but would not actually provide employment or housing; Mack would receive $1,000 per visa; and the remaining money would go to Villar and AMEB. At trial, Viscardi and Mack testified that the Penas were not parties to the agreement. Viscardi further testified that Villar instructed him not to discuss the agreement with the Penas.

Despite this, an email from Bernardo to Viscardi indicates that the Penas eventually found out about the new financial arrangement. On February 28, 2006, Bernardo e-mailed the following message to Mack Patel:

> [M]ack let me know how it went with marte . . . and if you are interested of paying only 15000 instead of 20000 in at least 15 V, let me know or call me to my cell its working here in India . . . this is between you and me and albert. . . . so let me know ASAP . . . i will call you at 12:00 noon mumbai.

Mack testified that the e-mail meant that Bernardo was offering to enter into a three-way side deal between Mack and the Penas where they would charge only $15,000 for fifteen visas and cut the others out of the deal. An associate at

No. 09-20870

AMEB, Alfonso Hernandez, also testified that he overheard a conversation between the Penas and Villar in which Villar was agitated with the Penas because they did not want to travel to India and Villar said that they should because there was $20,000 per visa at stake. Hernandez testified that this conversation occurred in between Bernardo's first and second trips to India.

Bernardo returned to Mumbai on November 29, 2005. On December 2, 2005, Korhonen interviewed and rejected all the applicants on the grounds that they had no experience in construction work and most did not appear to know what kind of work they would be doing. Bernardo returned to the United States on December 6, 2005. Alberto traveled to India on February 13, 2006, to meet with Angela Kerwin, Korhonen's replacement in the Consulate. Alberto provided Kerwin with information about Viscardi Services and the type of workers needed. Following interviews with the workers, Kerwin approved eighty-eight visa applications, and eighty-seven of the Indian workers arrived in the United States in late February and March, 2006.

Kerwin later realized that the applicants had been coached on what to say in their interviews. She testified at trial that had she known the workers were paying $20,000 per visa to work menial construction jobs for such a short period of time, she would have immediately reported the applicants to the fraud division. Both Kerwin and Korhonen testified that workers typically paid between $500 and $1000 for H-2B visas. An anonymous tip faxed to the Consulate in Mumbai, stating that the Indian workers had paid large sums of money to enter the United States without the intention of returning, prompted the State Department to investigate the Indian visa applications. The Consulate subsequently denied the remaining applications.

On March 31, 2008, a grand jury returned a nineteen-count Indictment against Alberto, Bernardo, Mack, Rakesh, and Villar. Count one alleged a conspiracy to encourage illegal immigration for private financial gain and to

commit visa fraud in violation of 18 U.S.C. § 371; counts two through fifteen alleged substantive counts of encouraging and inducing illegal immigration for the purpose of private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), (a)(1)(A)(v)(II), and (a)(1)(B)(i); count sixteen alleged money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and counts seventeen through nineteen alleged that the defendants engaged in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. Alberto and Bernardo were charged in counts one through fifteen; Bernardo was charged with aiding and abetting money laundering in count sixteen; and Alberto was charged with engaging in monetary transactions in property derived from specified unlawful activity in count seventeen. Viscardi accepted a plea agreement and pleaded guilty and was not named in the indictment. Mack and Rakesh were named in the indictment but pleaded guilty before trial. Villar absconded to Mexico and remains a fugitive.

Prior to trial, the Penas moved to suppress evidence of visa applications for Mexican workers relating to another enterprise of theirs, North American Quality Industrial Systems Corp. ("North American"). North American's certificate of incorporation lists the Penas as the directors and lists Bernardo as the registered agent. The Penas argued that because the visa applications concerned a different company and involved only workers from Mexico, their seizure exceeded the scope of the search warrant, which referred to North American only briefly as an "aka" of AMEB and which mentioned only Indian workers. The district court denied the motion. The Penas later moved to exclude the North American visa applications as evidence, arguing that they should be excluded as improper extrinsic evidence of other acts under Federal Rule of Evidence 404(b). The district court denied the motion, holding that the visas were admissible as intrinsic evidence of the crimes, or alternatively, as extrinsic evidence because they were relevant to the Penas' intent, motive, or

No. 09-20870

absence of mistake.  The Government used the evidence at trial to show that North American submitted requests for Mexican workers for non-existent construction projects in Biloxi, Mississippi, and South Padre Island, Texas, which it argued was probative of their intent regarding the Indian visas.

On March 23, 2009, Alberto and Bernardo proceeded to trial.  On April 3, 2009, the jury returned a guilty verdict on all counts.  Alberto was sentenced to 41 months of imprisonment.  Bernardo was sentenced to 30 months of imprisonment.  Both were also sentenced to three-year terms of supervised release.  The Penas timely appealed.

## II. DISCUSSION

Bernardo Pena challenges the sufficiency of the evidence supporting his convictions, arguing that the Government failed to prove the knowledge element of the conspiracy and immigration charges beyond a reasonable doubt.  He also appeals the sufficiency of the evidence with respect to his money laundering conviction.   Both Bernardo and Alberto challenge the admission of visa applications from their other company, North American, concerning Mexican nationals.  They contend that this was extrinsic evidence under Rule 404(b) that the district court should have excluded as either not sufficiently similar to the immigration charges or as unduly prejudicial under the two-prong *Beechum* test. *See United States v. Beechum*, 582 F.2d 828 (5th Cir. 1978) (en banc).  Finally, Alberto challenges the seizure of the North American visa applications as beyond the scope of the search warrant.

### A.    Sufficiency of the Evidence

We review a challenge to the sufficiency of the evidence de novo when, as here, the defendant has preserved his challenge by making a motion for acquittal at the close of evidence.  *United States v. Garza-Robles*, 627 F.3d 161, 166 (5th Cir. 2010).  This Court must determine "whether, when viewing the evidence in the light most favorable to the verdict, 'a rational trier of fact could have found

that the evidence established the essential elements of the offense beyond a reasonable doubt.'" *Id.* (quoting *United States v. Ferguson*, 211 F.3d 878, 882 (5th Cir. 2000)).

### 1.    Immigration and Conspiracy Charges

Bernardo argues that although he participated in activities that were part of the alleged conspiracy, he did not act with knowledge or in reckless disregard of the fact that the Indian workers intended to come to the United States illegally rather than as valid H-2B workers.  He claims that because it was equally plausible from the evidence that he thought the workers would be working for Viscardi Services pursuant to H-2B visas, the evidence was insufficient to establish his knowledge that the workers intended to remain illegally. *See United States v. Bieganowski*, 313 F.3d 264, 275 (5th Cir. 2002). Villar, he claims, was the instigator and "pulled the strings" in the immigration scheme and conspiracy.

Bernardo was convicted of encouraging or inducing an alien to enter the United States with knowledge or reckless disregard that such entry was in violation of the law. *See* 8 U.S.C. § 1324(a)(1)(A)(iv).  The elements of that offense are "(1) encouraging or inducing; (2) an alien; (3) to come to, enter, or reside in the United States; and (4) knowing or in reckless disregard that the alien's coming to, entering, or residing in the United States is illegal." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1294 (11th Cir. 2010) (citations and internal quotation marks omitted).  Additionally, to establish that Bernardo conspired to encourage and induce the entry of aliens in violation of the law, the Government must prove the following elements beyond a reasonable doubt: (1) an agreement existed between two or more persons; (2) to commit the substantive crime of inducing or encouraging illegal entry into the United States; and (3) that Bernardo voluntarily participated. *United States v. Stephens*, 571 F.3d 401, 404 (5th Cir. 2009).  Further, the Government must show that he acted with

requisite intent for the underlying crime—here, knowledge or reckless disregard. *See id.* "[A]n agreement may be inferred from concert of action, [v]oluntary participation may be inferred from a collocation of circumstances, and [k]nowledge may be inferred from surrounding circumstances." *United States v. Paul*, 142 F.3d 836, 840 (5th Cir. 1998) (second and third alterations in original) (quoting *United States v. Lechuga*, 888 F.2d 1472, 1476–77 (5th Cir. 1989)).

Viewing the evidence in a light most favorable to the verdict, the Government presented ample evidence from which a reasonable jury could find beyond a reasonable doubt that Bernardo had knowledge or recklessly disregarded the fact that his conduct served to induce illegal immigration. At trial, the Government presented evidence that Bernardo had extensive involvement in the conspiracy, including that he (1) traveled to India on multiple occasions, spending thirty days in the country to assist the visa approval process; and (2) signed several dozen of the H-2B Indian visa applications. Importantly, there is also evidence from two witnesses that Bernardo knew that they were billing each Indian worker $20,000 for each visa. This included testimony and e-mail documentation that Bernardo attempted to cut a side deal with Alberto and Viscardi. Additionally, AMEB, for which Bernardo was an owner and operator, billed Viscardi Services for the Mexican workers' visas, but not for the Indian workers' visas. Finally, Alfonso Hernandez, a friend whom Bernardo hired to do some work for AMEB, testified that Bernardo asked him to deposit a $6,000 money order for Bernardo into Hernandez's personal account and then pay Bernardo the money in cash, which Hernandez did.

Beyond this evidence, Bernardo was also not a novice to the process of acquiring H-2B visas; AMEB had previously obtained H-2B visas for Mexican workers under his direction. The applications he signed indicate that he knew the Indians were paying $20,000 per visa for jobs that paid only seven dollars

per hour and that could end in less than one year. Thus, a sum of $20,000 per visa would result in a loss of money for the workers over the course of one year. Given his experience, if not from common sense alone, Bernardo should have known that $20,000 per visa was an unreasonable sum for the Indian workers to pay given the type of work and its duration. Additionally, the Government provided evidence that Pena's other company, North American, filed H-2B visa applications for Mexican workers for jobs that did not exist. Given this evidence, a reasonable jury could infer a similar intent for the Indian visas: that Bernardo knew of the illegal scheme to profit from the Indian visas and that the Indian workers had no intention to work for Viscardi Services. Thus, the evidence was sufficient to prove his knowledge with respect to his participation in the conspiracy and to the substantive offenses.

### 2.   Money Laundering

Bernardo claims that if the evidence is insufficient to establish the conspiracy or substantive offenses, then the evidence is necessarily insufficient to establish that Bernardo committed the crime of money laundering. Alternatively, Bernardo argues that there is insufficient evidence to establish that he intended to conceal or disguise the nature of the proceeds.

At trial, the jury found Bernardo guilty of violating 18 U.S.C. § 1956(a)(1)(B)(i). To establish that he aided and abetted others in the offense of money laundering, the Government must establish beyond a reasonable doubt that Bernardo "(1) conducted or attempted to conduct a financial transaction, (2) which [he] knew involved the proceeds of unlawful activity, and (3) which [he] knew was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity." *United States v. Burns*, 162 F.3d 840, 847 (5th Cir. 1998) (citations omitted).

The evidence presented at trial established that proceeds in the amount of $55,000 were deposited into Bernardo's accounts of the same type and

denomination as money obtained by Viscardi and Mack, both of whom testified the money was from the conspiracy. Bernardo filled in the names on the money orders and also gave Alfonso Hernandez a $6,000 money order for Hernandez to deposit in his own account. Bernardo then instructed Hernandez to withdraw the same amount in cash to return to Bernardo. Bernardo contends that Hernandez's financial dependence on the Penas is an equally plausible explanation for the $6,000 transaction.

We have already held that the evidence was sufficient to maintain Bernardo's conviction on the conspiracy and immigration offenses. Further, testimony at trial established that the proceeds Bernardo deposited were of the same type and amounts as deposited by his co-conspirators. This evidence was sufficient to infer Bernardo's knowledge that the transactions involved proceeds of illegal activity. Under our case law, "concealment can be established by showing that the transaction is part of the larger scheme designed to conceal illegal proceeds." *United States v. Pipkin*, 114 F.3d 528, 534 (5th Cir. 1997) (citation and internal quotation marks omitted). Additionally, "the defendant's use of a third party, for example, a business entity or a relative, to purchase goods on [his] behalf . . . usually constitutes sufficient proof of a design to conceal." *Id.* (alterations in original) (quoting *United States v. Willey*, 57 F.3d 1374, 1385 (5th Cir. 1995)). Here, the evidence established both that Bernardo participated in a scheme to induce immigrants to enter the United States illegally, and that through his direction of Hernandez, Bernardo took steps to conceal the financial proceeds of such action. Therefore, the Government provided sufficient evidence to sustain Bernardo's money laundering conviction.

**B.    Admissibility of "North American" H-2B Visa Applications**

We review the district court's decision to admit "other acts" evidence for an abuse of discretion. *See United States v. Rice*, 607 F.3d 133, 138 (5th Cir. 2010). If we find that the evidence is extrinsic under Rule 404(b), we conduct

No. 09-20870

our review under a "heightened" abuse of discretion standard. *See United States v. Templeton*, 624 F.3d 215, 221 (5th Cir. 2010). We will not, however, reverse erroneous admissions of evidence under Rule 404(b) if such error was harmless. *Id.*

Alberto and Bernardo both challenge the admission of H-2B visa applications filed by North American for Mexican laborers. They argue that the district court erred in finding that the North American visa applications for Mexican workers were admissible as intrinsic evidence, because the applications did not relate to the Indian visa applicants at issue in this case and fell outside the time frame of the crimes charged. Further, they maintain that they are not admissible as extrinsic evidence under Rule 404(b). They assert that the Government improperly used the documents as character evidence, and even if they were admissible to show intent and motive, the risk of unfair prejudice to the Penas substantially outweighed any limited probative value.

To determine whether the district court erroneously admitted "other acts" evidence, we "must first decide whether the evidence was intrinsic or extrinsic." *Rice*, 607 F.3d at 141. Evidence is "intrinsic to the charged crime 'when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged.'" *Stephens*, 571 F.3d at 410 (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)).

We hold that the North American visa applications concerning Mexican nationals are extrinsic evidence that we must evaluate pursuant to Rule 404(b). The indictment in this case alleged a scheme to encourage and induce aliens to enter the United States in violation of the law for the purpose of financial gain from April 2005 through June 2006. The first visa filing of the North American scheme occurred on June 10, 2006, and continued through July 2007. Therefore, the North American documents were certainly not a "necessary preliminary" to

12

the Indian visa scheme. Further, the indictment described solely events relating to the Indian nationals. While the indictment does identify North American as an affiliate of AMEB, the factual allegations do not mention Mexican nationals or events after June 2006. The only evidence showing that the schemes may have been intertwined was the Penas' use of the same bank account for both enterprises. Given the allegations in the indictment, this evidence is insufficient to show that the North American visa applications were "inextricably intertwined" with the charged offenses or part of a "single criminal episode."

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In order for extrinsic "other acts" evidence to be admissible, (1) the evidence must be "relevant to an issue other than the defendant's character," and (2) the probative value of the evidence must not be substantially outweighed by undue prejudice to the defendant. *Beechum*, 582 F.2d at 911.

As required by Rule 404(b), the Government filed notice of its intent to introduce the North American H-2B visa applications. The notice stated that the Government intended to offer the North American H-2B visa applications and prove that the filings for these visas were false. By establishing the falsity of the North American filings, the Government intended to establish that the Penas were using North American to enable foreign workers to fraudulently obtain immigration benefits. While the district court held that the North American visa evidence was intrinsic, it alternatively held that the evidence was admissible extrinsic evidence under Rule 404(b). It explained that the Penas' defense was lack of knowledge that the Indian visa scheme intended to induce

illegal immigration, and therefore that this evidence was admissible to show intent and absence of mistake.

We have held that "*Beechum*'s relevancy threshold is satisfied if [the] evidence is relevant to an issue other than propensity to commit the act, such as intent, motive, or plan." *United States v. LeBaron*, 156 F.3d 621, 624 (5th Cir. 1998) (citing FED. R. EVID. 404(b)). We have also found that as a matter of law, "[t]he mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence." *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996) (citations omitted). Because the Penas both pleaded not guilty to the conspiracy charge, and because they used lack of knowledge as a defense, the evidence of the allegedly fraudulent visa filings pertains directly to the Penas' intent or motive.

Having determined that the North American visa evidence is relevant to show intent or motive, we must next determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See Beechum*, 582 F.2d at 911. This prong involves a "commonsense assessment of all the circumstances surrounding the extrinsic offense." *Id*. at 914.

Bernardo argues that the extrinsic evidence was prejudicial because of the Government's heavy focus on this evidence: three witnesses and references during opening and closing arguments. He also argues that the Government shifted its focus from using the North American evidence to establish intent, motive, or knowledge to using the evidence to establish the Penas' propensity for fraud. Alberto argues that the documents lacked probative value because H-2B visa applications are form documents and that the other acts evidence did not occur during the life of the conspiracy.

We have noted that the extent of the similarity between the extrinsic offenses and the charged crime heightens the probative value of the evidence but also increases the "ever-present risk of unfair prejudice by inferring propensity."

*United States v. Williams*, 620 F.3d 483, 491 (5th Cir. 2010) (citations omitted). "This danger is 'particularly great where, as here, the extrinsic activity was not the subject of a conviction.'" *Id.* (quoting *Beechum*, 582 F.2d at 914). When the district court issues limiting instructions, however, this tempers the risk of unfair prejudice. *Id.* at 492. Therefore, "[a]s long as it is clear to the jury that the extrinsic evidence . . . is presented only to show modus operandi to prove knowledge and intent, there is little danger that presentation of the extrinsic evidence will cause unfair prejudice." *Williams*, 900 F.2d at 827.

We find that the probative value of the North American visa evidence was not substantially outweighed by a risk of unfair prejudice. The district court here issued a limiting instruction to the jury, informing it that it

> must not consider any of the [extrinsic] evidence in deciding if the defendant[s] committed the acts charged in the indictment. However, you may consider this evidence for certain other, very limited, purposes. If you find beyond a reasonable doubt from other evidence in this case that the defendant did commit the acts charged in the indictment, then you may consider the evidence of the similar acts allegedly committed on other occasions to determine . . . state of mind or intent . . . motive or opportunity . . . plan or preparation . . . or accident or mistake. These are the limited [purposes] for which any evidence of other similar acts may be considered.

The district court's limiting instruction minimized the risk of unfair prejudice to the Penas. Additionally, the evidence was particularly probative of intent and motive, because North American filed the visa applications at issue immediately after the events of this conspiracy, and the Penas were directors of North American. Therefore, we find that the this evidence was properly admissible extrinsic evidence under Rule 404(b).

## C.    **Denial of Motion to Suppress**

Alberto Pena filed a pre-trial motion to suppress the North American visa applications because they exceeded the scope of the search warrant. The district

court denied the motion because the affidavits attached to the warrant "specifically mentioned" North American as "having its place of business at the AMEB premises" and the two were "being treated together for purposes of the affidavits" by the investigating agents. The district court also held that the language of the affidavits permitted the search for evidence of "criminal violations involving fraudulent visa applications for aliens from any [ ] country." Finally, the district court held that evidence of similar acts can be seized if it is relevant to an issue such as intent or knowledge. *See Andresen v. Maryland*, 427 U.S. 463, 483 (1976).

When considering the denial of a motion to suppress evidence, we review the district court's findings of fact for clear error, viewing the evidence in the light most favorable to the government, and its legal conclusions de novo. *See United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citations omitted). If the district court erred in failing to suppress the evidence, we may nonetheless affirm if the error was harmless. "'In the context of suppression of evidence, the test for harmless error is whether the trier of fact would have found the defendant guilty beyond a reasonable doubt if the evidence had been suppressed.'" *United States v. Willingham*, 310 F.3d 367, 372 (5th Cir. 2002) (quoting *United States v. Aucoin*, 964 F.2d 1492, 1499 (5th Cir. 1992)) (internal quotation marks and alterations omitted).

Alberto Pena challenges the district court's denial of his motion to suppress evidence of the North American visa applications pertaining to Mexican workers. He claims that the seizure of these documents exceeded the scope of the search warrants and are not admissible under any exception. Specifically, he argues that the crimes described in the affidavits attached to the search warrants pertained only to Indian visas, while the visa applications at issue concerned Mexican nationals and were outside of the conspiracy's time frame. Additionally, he argues that there is an "insufficient nexus" between the

North American documents and the scheme alleged here, and that their seizure was not justified by the "plain view" doctrine because they were not of an "incriminatory character."   The Government responds by noting that the warrants provided for the seizure of North American documents by listing North American as an alias or alter ago of AMEB.   Because the agents knew that North American was also run by the Penas and had bank accounts into which visa fraud funds had been deposited, the Government argues, the seizure was proper.

The Fourth Amendment provides the right to be secure against unreasonable searches and seizures.   U.S. CONST. amend. IV; *Creamer v. Porter*, 754 F.2d 1311, 1318 (5th Cir. 1985).   We have noted that "as a general rule only items described in a search warrant may be seized," but that this rule is subject to several exceptions.   *Creamer*, 754 F.2d at 1318.   One of these exceptions provides that evidentiary items may be seized if they have a "sufficient nexus to the crime being investigated."   *Id.* (citation omitted).   This nexus is satisfied when the agents had probable cause "to believe that the evidence sought will aid in a particular apprehension or conviction."   *Warden v. Hayden*, 387 U.S. 294, 307 (1967).   The Supreme Court has further held that the seizure of other evidence was proper where it would have been apparent to the agents based on their knowledge of the case that the evidence "could be used to show intent to defraud with respect to [the crimes described in the warrant]."   *Andresen*, 427 U.S. at 484.

We find that even if the seizure of the North American visa applications exceeded the scope of the warrant itself, the documents nonetheless had a sufficient nexus to the crimes alleged because of their apparent relevance to the Penas' intent or knowledge with respect to the crimes alleged.   The affidavits attached to the warrants specifically refer to North American as an alias of AMEB, showing that the investigators were aware of its existence and saw it as

17

part and parcel to AMEB.  Additionally, both affidavits spoke of suspicious deposits into the bank accounts belonging to "AMEB Business Group (a/k/a North American Quality Industrial)."  Further, the affidavits refer to the agents' knowledge that it is "common for alien smuggling organizations to attempt to legitimize the proceeds of its illegal activities" though "front businesses," among other things.  Based on the agents' reasonable belief at the time of the search that AMEB and North American were the same business and shared the same bank accounts, and that the crimes focused on use of H-2B visas to induce illegal immigration, the agents had probable cause to believe that the North American visa forms were relevant to the Penas' intent or knowledge.  That the country listed on the forms was Mexico and not India does not alter this rationale.

Therefore, because the information available to the agents at the time of the search provided probable cause to believe that the North American visas would aid in the Penas' conviction, we affirm the district court's denial of the suppression motion.

### III. CONCLUSION

We find that the jury had sufficient evidence to find beyond a reasonable doubt that Bernardo Pena committed the crimes charged.  Additionally, we find that the district court did not err in admitting evidence of the North American visa applications, as they were properly admissible extrinsic evidence under Rule 404(b), or in denying the motion to suppress.  Therefore, we affirm Appellants' convictions.

AFFIRMED.