UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-3696
Summary Calendar
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LARRY URBANI,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Eastern District of Louisiana
_____

(July 13, 1992)

Before GARWOOD, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Larry Urbani (Urbani) pleaded guilty to conspiracy to commit fraud and was sentenced following that plea to a term of imprisonment within the guidelines range. He brings this appeal challenging the government's refusal to move for a downward departure from the guidelines under U.S.S.G. § 5K1.1 and the district court's refusal to hold an evidentiary hearing to examine the extent of his assistance to the government. We affirm.

## Facts and Proceedings Below

On October 18, 1990, Urbani and three others were named in a

forty-one-count indictment concerning a fraudulent scheme of leasing vending and amusement machines, engaged in by several related companies of which Urbani was an employee. Urbani was named in twenty-seven counts, charging him with conspiring to commit mail and wire fraud and with the substantive fraud offenses, in violation of 18 U.S.C. §§ 371, 1341, and 1343. After the indictment was handed down, he entered into a plea agreement with the government. Under it, Urbani agreed to plead guilty to Count One of the indictment, the conspiracy count, to submit to debriefing whenever requested by law enforcement authorities, and to testify fully and truthfully before a grand jury or at any trial. In exchange, the government agreed not to pursue the remaining counts of the indictment (or other offensesSQexcept crimes of violence, if anySQrelated to the subject matter of the investigation leading to the indictment), and to "bring to the attention of the Court any cooperation rendered to law enforcement authorities by the defendant."[1] The plea agreement expressly and unequivocally disclaimed, however, any obligation by the government to file a motion authorizing the district court to depart downward from the guidelines under U.S.S.G. § 5K1.1 for the defendant's substantial assistance to the authorities.[2] Urbani entered a

---

[1] It was also agreed that any statements or testimony furnished by Urbani (or anything derived therefrom) would not be used against him.

[2] The plea agreement, dated November 29, 1990, stated:

"However, defendant's cooperation does not automatically require the Government to request a departure from the sentencing guidelines for substantial assistance to the Government. That

2

guilty plea pursuant to this agreement on April 11, 1991.

Between November 1990 and June 1991, Urbani attended seven debriefing sessions with the government.  Prior to his scheduled sentencing on June 26, 1991, Urbani was informed by the Assistant United States Attorney that a motion from the government for a section 5K1.1 departure would not be forthcoming.  Sentencing was continued at Urbani's request to permit him to try to resolve this disagreement with the government.

The presentence report (PSR) calculated a guidelines imprisonment range of twenty-four to thirty months and noted that "[n]o information has been developed which would indicate an upward or downward departure from the guidelines."  Urbani did not challenge the calculation of the guideline range, but did object to the PSR on the ground that he was entitled to a section 5K1.1 departure.  As described in the probation officer's addendum to the PSR, Urbani's objection was that "failure to grant a Section 5K1.1 in this circumstance is arbitrary on the part of the Government and violative of his due process rights."

The prosecutor did not change his mind about the 5K1.1 motion during the four-week continuance.  However, on July 23 he did send

_____

decision will be made by the Government after it evaluates the cooperation.  If the Government decides to file a motion that the Court may depart pursuant to Section 5K.1 [sic] of the sentencing guidelines, the Government will file a motion at a time determined by the Government, and only after the Government evaluates the entire cooperation of defendant.  . . .  The defendant further understands that the Government is under no obligation whatsoever to file a motion with the Court at any time for the departure from the Sentencing Guidelines."

3

a letter to the district court describing Urbani's cooperation. The letter noted that since the plea bargain Urbani had attended seven meetings with the investigating agents, and in the opinion of those agents had been truthful in responding to questions. However, the letter also stated that the information provided by Urbani had largely been known to the government already through Urbani's co-defendants and through various potential defendants, who had cooperated in the case before Urbani offered to assist the government, and through the investigative efforts of the Federal Bureau of Investigation (FBI), Internal Revenue Service (IRS), and Federal Trade Commission. The letter noted that although Urbani's cooperation further verified certain facts that the government was relying on in its prosecutions, it came only after he had initially turned down an offer to cooperate in the early stages of the investigation and the government had already sufficiently prepared its case to return an indictment. For those reasons, the letter indicated, the government would not move for a departure under section 5K1.1, but would also not object to the court's imposing a sentence at the lower end of the guideline range.

At the sentencing hearing on July 24, 1991, Urbani, through counsel, reiterated his contention that he was entitled to a downward departure. Counsel stated that

> "while we agree at this point with the guidelines as suggested in the pre-sentence report, we thank the Government for the letter indicating that they recommend a lower end of the guidelines in this case, we believe, Your Honor, that there is evidence to present to the Court that indicates that our client is entitled to a downward departure under the 5K1.1. . . . The United States Government and defense disagree from a factual standpoint whether our client is entitled to that."

4

He requested an evidentiary hearing on this matter and permission to subpoena the FBI and IRS agents to whom he had provided information.  The district court accepted Urbani's contention that it had authority, even in the absence of a 5K1.1 motion from the government, to examine whether he was entitled to such a departure, but noted that whether or not to hold a hearing remained a discretionary matter for the district court.  The court declined to follow the course suggested by Urbani, choosing instead to rely on the PSR, on the government's letter of July 23, and on any information Urbani wished to provide orally at the sentencing hearing.  Through his counsel Urbani informed the court that he had attended meetings totaling twenty to thirty hours, and that the information he had provided had enabled the government to recover valuable assets and had aided its ongoing investigations into other crimes.  The government simply replied that its position was adequately outlined in the July 23 letter.  The district court imposed a sentence of twenty-five months' imprisonment.

In a motion for reconsideration dated August 2, 1991, Urbani again asked the district court to exercise its discretion to hold a hearing on his entitlement to a section 5K1.1 reduction, or "[a]lternatively" to conduct such a hearing "to determine whether the government has not acted in an arbitrary and capricious manner."[3]  This motion was denied as moot.

---

[3]     In a brief filed below in support of this motion, the passing and wholly unelaborated-on comment is made that the government "dishonored the plea agreement."  That contention was not previously raised, and has not been raised on appeal.  It is therefore abandoned.  Moreover, the record contains absolutely no evidence, nor any factual allegations or elaborations, tending to support that contention.

Urbani brings this appeal challenging the government's refusal to move for a departure under section 5K1.1 and the district court's denial of an evidentiary hearing.

**Discussion**

U.S.S.G. § 5K1.1 (policy statement) provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." In considering the constraints, if any, on the government's decision whether or not to file a motion under this section, we must begin with the Supreme Court's recent decision in *Wade v. United States*, 60 U.S.L.W. 4389 (1992). In *Wade*, the Supreme Court considered district courts' authority to review a prosecutor's refusal to file a motion under 18 U.S.C. § 3553(e), which authorizes a district court, upon motion of the government, to impose a sentence less than a statutory minimum in recognition of the defendant's substantial assistance to the government. Although the present case does not involve a statutory minimum sentence and thus implicates only section 5K1.1 and not section 3553(e),[4] the Supreme Court in *Wade* indicated that the principles it announced were applicable to both sections.[5]

---

[4]     18 U.S.C. § 371, to which Urbani pleaded guilty, limits sentences to no more than five years, but does not impose a minimum limit.

[5]     The guideline range for Wade's drug offenses was 97 to 121 months' imprisonment, but the pertinent statute required a ten-year minimum sentence. Apparently because the guidelines do not authorize a sentence below any statutorily mandated minimum, *see* U.S.S.G. § 5G1.1(c)(2), the Supreme Court observed that Wade's claim of entitlement to a motion allowing the court to depart

6

Like Urbani, Wade argued *based solely on the extent of his assistance to the government* that the government's refusal to move for a downward departure was arbitrary and hence violative of his constitutional rights. The Court first observed that the guideline provision and the statute condition a court's authority to depart on a motion from the government, but that this arrangement itself does not limit the government's discretion to decide whether to make such a motion in a particular case. *See Wade*, 60 U.S.L.W. at 4390 ("[I]n both § 3553(e) and § 5K1.1 the condition limiting the court's authority gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted."). Rather, the Court noted, this decision by the government is reviewable only on the same basis as other discretionary decisions by a prosecutor: district courts may grant relief "if they find that the refusal was based on an unconstitutional motive" such as the defendant's race or religion. *Id.* The Court made plain, though, that absent a substantial threshold showing of such a constitutionally improper motive, district courts lack authority to scrutinize the level of the defendant's cooperation and interpose their own assessment of its value. Moreover, this limited scope of review forecloses even the need for an evidentiary hearing solely to document the defendant's assistance: "It follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant

---

below 120 months on these charges "implicates both 18 U.S.C. § 3553(e) and USSG § 5K1.1." *Wade*, 60 U.S.L.W. at 4390. The Court further noted that the parties had argued the case on the premise that in such a situation "the two provisions pose identical and equally burdensome obstacles." *Id*.

7

to a remedy or even to discovery or an evidentiary hearing." *Id*.[6]

Urbani's contentions cannot survive the framework established by the Supreme Court in *Wade*. He has not at any point alleged an illicit motivation underlying the government's refusal to request a 5K1.1 departure. The entirety of his argument, both to this Court and to the district court, has been that given his level of cooperation with the government, withholding a 5K1.1 motion was arbitrary and without justification. Thus, it is exactly the type of claimSQ*i.e.*, "a claim that a defendant merely provided substantial assistance"SQthat *Wade* indicates is unavailing and does not warrant an evidentiary hearing.

The standard applicable to other discretionary prosecutorial decisions, with which the *Wade* Court equated the decision to file a 5K1.1 motion, *see supra*, confirms this view. Decisions regarding whom to prosecute are committed to the government's discretion unless "'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' including the exercise of protected statutory and constitutional rights." *Wayte v. United States*, 105 S.Ct. 1524, 1531 (1985) (citations omitted) (quoting *Bordenkircher v. Hayes*, 98 C.Ct. 663, 668 (1978)) (cited

---

[6] This holding by the Court clarifies an issue to which we referred in a 1989 opinion sustaining section 5K1.1 against a challenge that, by requiring a motion by the government, it failed to implement the statutory directive to reflect the appropriateness of taking into account a defendant's assistance to the government. In that case we stated that section 5K1.1 "obviously does not preclude a district court from entertaining a defendant's showing that the government is refusing to recognize such substantial assistance." *United States v. White*, 869 F.2d 822, 829 (5th Cir.) (per curiam), *cert. denied*, 109 S.Ct. 3172 (1989). *See also United States v. Paden*, 908 F.2d 1229, 1234 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 710 (1991).

at *Wade*, 60 U.S.L.W. at 4390). Likewise, the prosecutor's discretion in selecting the criminal statute under which to prosecute is subject only to the limitation that the decision not involve deliberate discrimination against a class of defendants. *United States v. Batchelder*, 99 S.Ct. 2198, 2204 (1979); *Bordenkircher v. Hayes*, 98 S.Ct. 663, 668-69 (1978).

Under the principle expressed in these cases, although a defendant might conceivably state grounds for relief by alleging that refusal to move for a departure under section 5K1.1 was "arbitrary" because it was based on his membership in an identified group, or on some specified characteristic, that the government has no possibly legitimate grounds for treating in a discriminatory manner, Urbani's unadorned allegation of general arbitrariness must fail. It contains no suggestion that the government's decision was based on such a constitutionally suspect reason. Absent any such suggestion, it is difficult to see how his claim indicates anything more than his disagreement with the government's decision and an invitation to the district court to similarly disagree, which is exactly the type of judicial oversight that *Wade*, through its adoption of the *Wayte* standard, forbids as overly intrusive on the prosecution's broad discretion.

We understand the Supreme Court to have been reiterating this basic distinction in stating that "Wade would be entitled to relief if the prosecutor's refusal to move was not rationally related to any legitimate Government end." *Wade*, 60 U.S.L.W. at 4391 (citing *Chapman v. United States*, 111 S.Ct. 1919 (1991)). Any inclination to give this statement broader meaning, so as to encompass Urbani's

9

claim, is foreclosed not only by the preceding discussion in the Supreme Court's opinion but by the facts of the *Wade* case. In response to Wade's argument, which was evidently identical in substance to Urbani's, the district court ruled that it had no power to impose a sentence below the statutory minimum without a motion from the government and no authority to inquire into the government's motives for not filing a motion. Despite qualifying that approach somewhat by clarifying that district courts are authorized to inquire into the government's motives to the limited extent of ensuring that the decision was not driven by a constitutionally forbidden purpose, the Supreme Court found no obstacle to affirming Wade's sentence, because on its face Wade's claim did not raise such an issue. The Court thus by necessary implication held that Wade's contentions were sufficiently removed from ones that could state a claim to render harmless a denial of a hearing, even though the denial was possibly based on the district court's overly restrictive understanding of its own authority.

In the present case, by contrast, the district court assumed that it *did* have authority to consider the evidence of Urbani's cooperation in deciding whether to depart, yet chose to rely on the government's letter and on the statements made at the sentencing hearing. The district court's view of its authority was, if anything, too broad according to the subsequent pronouncements in *Wade*. Therefore, its refusal to conduct an evidentiary hearing was not based on an incorrect view of the law, but was essentially a

10

decision based on the allegations before it.[7]  Even more than in *Wade*, therefore, the district court's decision cannot have constituted an abuse of discretion.

## Conclusion

Because under the Supreme Court's *Wade* decision prosecutorial decisions to grant or withhold a motion under section 5K1.1 are insulated from challenge on the grounds raised by Urbani, he is entitled to no relief from the government's refusal to make such a motion, and the district court did not err in declining to hold an evidentiary hearing to examine the extent of Urbani's assistance. The district court's sentence is therefore

AFFIRMED.

---

[7]    We also observe that there was apparently little, if any, specific factual dispute about Urbani's cooperation; the government did not contest Urbani's counsel's statements at the sentencing hearing, and Urbani has not expressly challenged any factual particulars of the account given in the government's July 23 letter, either to the district court or to this Court.